A06A1938. THOMAS v. HOME DEPOT, U.S.A., INC.
(644 SE2d 538)

ANDREWS, Presiding Judge.

Anne Thomas sued Home Depot after she punctured her eye on a "tomato tower" that was protruding from the cart behind her in the checkout line. The trial court granted Home Depot's motion for summary judgment and Thomas appeals, claiming the trial court erred in concluding that Home Depot did not breach any duty owed to Thomas, and also erred in concluding that Thomas could not show that any alleged breach of duty was the proximate cause of her injury. For the following reasons, we disagree and affirm.

Summary judgment is proper when the evidence, construed in the nonmovant's favor, shows that no issue of material fact remains and the movant is entitled to judgment as a matter of law. A defendant may prevail on summary judgment "by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

The relevant facts in this case are undisputed. Thomas stated that she was in the checkout line in the garden center at the Home Depot in Cumming when the incident occurred. Thomas asked the cashier for a plastic bag and as the cashier was handing the bag to Thomas, it fell on the floor. Thomas bent down to pick up the bag and felt something sharp strike her in the eye. Thomas afterward learned that she had been struck by the sharp end of a "tomato tower"[1] that was protruding from the shopping cart of the customer behind her in line. Thomas said she thought the customer may have been pushing the cart forward when she was struck and there was other evidence that the customer was pushing his cart forward as Thomas bent down to pick up the bag. This customer was never identified because he left the store immediately after Thomas was injured.

Thomas sued Home Depot, claiming, among others, that Home Depot was negligent in the "packaging, storage[,] and in the manner in which it permitted the transporting of the tomato cages." Home Depot filed a motion for summary judgment on all counts, which the trial court granted. The court held that "there [was] neither a legal duty owed to [Thomas] nor any breach of any legal duty by Home Depot to prevent acts which were committed by an unidentified third person/customer"; and, even if there were a breach of some duty, this breach was not the proximate cause of Thomas's injury. This appeal followed.

OCGA § 51-3-1 imposes upon an owner the duty to exercise ordinary care to keep the premises and approaches safe for invitees. *Towles v. Cox*, 181 Ga. App. 194, 195 (351 SE2d 718) (1986). This duty is not a duty to absolutely prevent injury as a proprietor is not an ensurer of the safety of its customers. *Globe Oil Co., USA v. DeLong*, 182 Ga. App. 395, 396 (356 SE2d 47) (1987).

A proprietor's obligation to keep the premises safe includes a duty to inspect the premises to discover possible dangerous conditions of which he does not know and to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement and use of the premises. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner and not known to the person injured that a recovery is permitted.

---

[1] Tomato towers are wire cages that fit over the tomato plants after they are planted. The cages have four legs with pointed ends so that they can be driven into the ground.

*Walker v. Bruhn*, 281 Ga. App. 149, 150 (635 SE2d 322) (2006). Because this particular injury was a result of a third party's action, the appropriate inquiry is whether Home Depot had superior knowledge of the danger that a third party would act in such a way. *Yager v. Wal-Mart Stores*, 257 Ga. App. 215, 216 (570 SE2d 650) (2002).

In support of its motion for summary judgment, Home Depot pointed out that there were no reported complaints alleging injury from a tomato tower at this Home Depot within the three years prior to this incident. Home Depot submitted a list of twenty-three incidents involving tomato towers at other stores, and Thomas points out that in three of these incidents customers were injured by the tomato towers. But, in order for these incidents to show superior knowledge on the part of Home Depot, they must have been sufficiently similar. An owner has no duty "to foresee and warn against dangers which are not reasonably expected, and which would not occur except under exceptional circumstances or from unexpected acts of the person injured." *Sutton v. Sutton*, 145 Ga. App. 22, 25 (243 SE2d 310) (1978). In this case, none of the previous injuries occurred after the towers had been put in a cart and none involved the independent acts of a third party.

In a similar case, the appellant and her fiancé were shopping in Wal-Mart when the fiancé took a "super soaker" water gun off the shelf and pulled the trigger, hitting appellant in the ear with a forceful stream of water. It was never determined how the water got into the gun. This Court held that a proprietor is under no duty to foresee dangers which are not reasonably expected and which would not occur except from unexpected acts. *Yager*, supra at 217.

Likewise, in *Cook v. Home Depot*, 214 Ga. App. 133 (447 SE2d 35) (1994), this Court rejected the same arguments advanced by Thomas in the instant case. Id. at 133-134. The appellant in *Cook* was injured when a piece of plywood fell off the top of the pile of stacked wood. This Court held that an injury resulting from the manner in which the plywood was stacked was not sufficiently similar to incidents where lumber was pulled down by customers or other objects had fallen on customers, id. at 134; thus, there was no evidence that Home Depot had superior knowledge as to any defect or hazard. Id.

The dissent mentions that a nursery owner's affidavit states that he helps customers in loading the tomato towers in their vehicles. This is not relevant. The practices of a nursery owner cannot change the standard of care for Home Depot from that of ordinary to extraordinary, and that is what the dissent is advocating in this case. Contrary to the dissent's response to the special concurrence, Home Depot is not obligated to protect its customers from any object that could present a danger to them. "Almost every physical object can be inherently dangerous or potentially dangerous in a sense. A lead

pencil can stab a man to the heart or puncture his jugular vein, and due to that potentiality it is an 'inherently dangerous' object. . . . But the doctrines fashioned by the law for inherently dangerous objects do not encompass these things." *Stovall & Co. v. Tate*, 124 Ga. App. 605, 610 (184 SE2d 834) (1971).

Here, because none of the accidents involving tomato towers was in any way similar to the manner in which Thomas was injured, it was not foreseeable that a customer would place the tower in his cart with the sharp tips protruding through the front of the cart and then push the cart forward just as Thomas was bending over, striking her in the eye. Therefore, the trial court did not err in concluding that Home Depot had no duty to protect Thomas against the unforeseeable acts of a third party. *Yager*, supra; *Cook*, supra.

In light of our holding that Home Depot breached no duty to Thomas, we need not address her argument that the trial court erred in determining that there was no issue of fact as to proximate cause.

*Judgment affirmed. Johnson, P. J., Smith, P. J., Miller and Ellington, JJ., concur. Adams, J., concurs specially. Barnes, C. J., dissents.*

ADAMS, Judge, concurring specially.

I concur fully in the majority opinion and write separately to stress that to allow liability to attach to Home Depot under these circumstances will overextend the law of premises liability for retail establishments.

Surely it is a known and obvious fact that there are many, many sharp items available in a hardware store. It is also obvious, therefore, that another customer could be holding or carrying one of these items. The sharp item at issue in this case was in the possession of another customer. Although it was in his cart, I see no analytical difference between this situation and one in which the customer is holding the sharp item. Thus, the simple facts of the case are that the plaintiff was injured when she made a sudden and unexpected movement that brought her into contact with a sharp item held by another customer. And the fact that the item had sharp points was open and obvious to anyone who cared to look. The case would be the same if the unknown customer had been holding a pitchfork, shovel, rake, hoe, screwdriver, saw, pick, nail, or any one of a number of other items available for sale in a hardware store. Normally, a retailer is not liable for the actions of customers who are carrying store merchandise in a dangerous manner unless the retailer is on notice of the probability of danger:

> If the conduct of third persons . . . is such as to cause any reasonable apprehension of danger to other customers or

invitees because of such conduct, it is the duty of the proprietor to interfere to prevent probable injury; and a failure so to interfere, and consequent damage, will subject such proprietor to an action for damages for such negligent failure to prevent the injury. This duty of interference on the proprietor's part does not begin until the danger is apparent, *or the circumstances are such as would put an ordinarily prudent man on notice of the probability of danger.*

(Citations and punctuation omitted; emphasis in original.) *Towles v. Cox*, 181 Ga. App. 194, 197 (1) (351 SE2d 718) (1986). In other words, "[i]f a third party's misconduct causes injury to a plaintiff while on the premises, the inquiry is whether the proprietor had superior knowledge of the danger that a third party would so act. [Cit.]" *Yager v. Wal-Mart Stores*, 257 Ga. App. 215, 217 (570 SE2d 650) (2002).[2]

After extensive research, I have not found a single case in this state or any other that allows liability for a retailer under facts such as these where a customer is simply carrying a sharp object that accidentally causes injury. Although a shopping cart with the points of a tomato tower protruding from it could be dangerous, there is no suggestion that Home Depot had actual or constructive knowledge that the customer was acting in a dangerous manner or placing others at risk. Compare *Bragg v. Warwick Shoppers World*, 227 A2d 582 (R.I. 1967) (claim stated against retailer where plaintiff alleged that he was struck by fishing pole that protruded from shopping cart being pushed by small child and that retailer either knew or should have known of the child's actions); *Wallace v. Sears, Roebuck & Co.*, 196 Ga. App. 221 (396 SE2d 41) (1990) (evidence presented that employees had knowledge of children using unsecured skateboards in store). There is also no evidence that the sharpness of the item was a latent defect, i.e., that it was unexpectedly sharp. Compare *Barken v. S. S. Kresge Co.*, 117 SW2d 674, 679 (Mo. App. 1938) (claim stated against retailer who should have known of easily discoverable, unusually sharp, temple piece on sunglasses, which caused injury to plaintiff's eye while she was trying them on).

Nor did Home Depot have superior knowledge of the danger based on other incidents. Of the twenty-three incidents in a three-year period occurring nationwide at Home Depot that involved either a tomato tower/cage, tomato stakes, or "tomato rods," fourteen are not

---

[2] Cf. *Psillas v. Home Depot, U.S.A.*, 66 SW3d 860, 865-866 (Tenn. App. 2001) (retailer not liable under res ipsa loquitur theory of premises liability for child who was cut in store, where the possibility existed that another customer could have left a sharp object in the aisle where the child was playing right before the injury).

remotely related.[3] Of the times someone was cut, punctured, stabbed or lacerated by a tomato tower, four occurred either as the customer was trying to pull the banding off tomato towers or stakes, or as the customer was trying to pull two or more tomato towers apart. One occurred when the customer tripped on another item and landed on a "tomato rod"; one occurred when the customer's "right forearm was caught by the wire of a tomato cage" for unknown reasons; and one occurred when an employee was spinning a tomato plant and hit someone's head.

Only two incidents in all Home Depot stores in America in a three-year period involved someone bending over and poking their eye on such an item. In one, an employee bent down to pick up a tomato plant and poked his eye on a wooden stake, arguably distinguishing that incident. In the other, the customer bent over and struck her eye on a tomato tower. This incident does not give Home Depot superior knowledge of the danger. First, the danger of hitting something with your head when you bend over in a close area is obvious. Second, neither incident involved a customer, or anyone else, carrying a tomato tower to the checkout counter in a manner that might cause injuries to others. Thus, nothing gave Home Depot superior knowledge that something should be done to protect customers or bystanders from other customers carrying tomato towers around in the store.

"One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what is only remotely and slightly probable." (Citations omitted.) *Feldman v. Whipkey's Drug Shop*, 121 Ga. App. 580, 581 (2) (174 SE2d 474) (1970).

As for the affidavit from the owner of a "local nursery," although he claims to be knowledgeable about the hazards generally known in the nursery industry, he never gives an opinion as to what the industry standard is. His affidavit merely states that *his nursery* never placed tomato towers in the retail area of a store and that it assists customers with loading and transporting the items to avoid the risk of injury. One store owner's practices does not an industry standard make.

In short, there is no basis for imposing liability on Home Depot, and to allow liability in this situation would require all hardware stores in this state to repackage or reject all merchandise that

---

[3] Six involved injuries sustained when the item fell on the customer; two involved a falling item which caused the customer to trip; four involved simply tripping over the item; and in two incidents, the customer either was struck by something else or tripped when reaching for a tomato cage or similar item.

potentially could cause an accidental injury to a fellow shopper while being carried to the checkout counter.

BARNES, Chief Judge, dissenting.

Because I cannot agree that Home Depot breached no duty owed to Thomas and that the breach of duty was not the proximate cause of Thomas's injury, I must respectfully dissent. Thomas's complaint alleged that Home Depot was negligent in the "packaging, storage and in the manner in which it permitted the transporting of tomato cages." In my view the trial court, the majority, and the special concurrence focus too narrowly on the act committed by the customer transporting the tomato tower in his shopping cart, and not on the general danger created by the sharp points of the tomato tower.

As the majority accurately states, an owner or occupier of land has the duty to exercise ordinary care to keep the premises safe for invitees. OCGA § 51-3-1. Because she was a shopper in Home Depot, Thomas was an invitee, and the only questions that arise are (1) whether Home Depot breached a duty and (2) whether this breach was the cause of Thomas's injury.

Home Depot failed to protect Thomas from a danger of which it was aware by failing to package the tomato towers in such a manner that the sharp ends would not protrude and injure its customers. The five prior incidents in which Home Depot customers or employees were "punctured," "stabbed," or "cut" by the sharp ends of the tomato towers were more than sufficient to put Home Depot on notice of the potential danger arising from the sharp ends of the tomato towers and to require it to take reasonable precautions to protect its customers from this danger.

Moreover, this is a danger recognized in the industry. The record contains an affidavit from an owner of a local nursery attesting to the fact that the danger is well known and that in his nursery tomato towers are not placed in the general retail space, but rather are put in a separate location. Additionally, he stated that because tomato towers are not safe to be loaded in shopping carts, his employees assist customers with loading tomato towers in their vehicles.

By looking only at the particular manner in which Thomas was injured the trial court, the majority, and the special concurrence have focused too narrowly on what our law requires to put an owner or occupier on notice. The law in Georgia does not require that the prior incidents be identical. Under our law,

> for a party to be held liable for negligence, it is not necessary that he should have been able to anticipate the particular consequences which ensued. It is sufficient if, in ordinary prudence, he might have foreseen that some injury would

result from his act or omission, and that consequences of a generally injurious nature might result. [Cit.]

*Orkin Exterminating Co. v. Carder*, 258 Ga. App. 796, 802 (2) (b) (575 SE2d 664) (2002). Therefore, Home Depot was not required to anticipate that customers would place the tomato towers in their shopping carts in such a fashion that other customers would bend over and puncture their eyes on the sharp ends of the tomato towers as Thomas did here. It was only required to anticipate that if it did not take some step to protect its customers from the danger created by the sharp ends of the tomato towers, a customer might be hurt by them.

As for the concern expressed in the special concurrence, our law is clear that if the owner or proprietor has a basis to anticipate that pitchforks, shovels, rakes, hoes, screwdrivers, saws, picks, nails, or any other objects present a danger to customers, it is the duty of the owner or proprietor to "take reasonable precautions to protect the invitee from dangers. . . ." *Walker v. Bruhn*, 281 Ga. App. 149, 150 (635 SE2d 322) (2006). Therefore, if it becomes reasonably apparent that any of these items present a danger to Home Depot's customers, then Home Depot is obligated to take reasonable precautions to protect its customers from those apparent dangers.

Moreover, this concern about the burden placed on Home Depot to protect its customers minimizes the local nursery owner's testimony that only the minimum precautions of placing the cages where customers are not readily injured by them and assisting customers with loading and transporting the tomato cages are sufficient to protect their customers. Further, the special concurrence's detailed analysis of the prior injuries caused by tomato towers merely underscores how dangerous these tomato towers really are and the many ways in which they can injure Home Depot's customers.

As Home Depot failed to take any precaution to protect its customers from the sharp ends of the tomato towers, and Thomas was injured by such a sharp end, the evidence was sufficient to at least create a genuine issue of material fact on whether Home Depot's negligence was the proximate cause of her injury. Therefore, the trial court erred by granting summary judgment to Home Depot.

Accordingly, I must respectfully dissent.

DECIDED MARCH 30, 2007.

*Jay W. Pakchar*, for appellant.
*Gray, Hedrick & Edenfield, Lloyd B. Hedrick, Jr., Evan R. Mermelstein*, for appellee.